# EXHIBIT 6

**PATENT**
Serial No. 09/897,003

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re reexamination of: 6,085,192 | Confirmation No.: 9956 |
| First Named Inventor: Daniel J. Mendez | Examiner: Alford W. Kindred |
| Control No.: 90/007,093 | Group Art Unit: 2163 |
| Filed: 06/18/2004 | Attorney Docket No.: 25587-033-005 RE |
| For: SYSTEM AND METHOD FOR SECURELY SYNCHRONIZING MULTIPLE COPIES OF A WORKSPACE ELEMENT IN A NETWORK | |

<u>**AMENDMENT AND RESPONSE IN EX PARTE REEXAMINATION**</u>

Mail Stop Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

The following amendments and remarks are filed in response to the Office Action mailed February 7, 2005, the shortened three-month statutory period for response to which expires on May 7, 2005.

**Amendments to the Specification** begin on page 2 of this paper.

**Amendments to the Claims** are reflected in the listing of claims which begins on page 5 of this paper.

**Remarks/Arguments** begin on page 10 of this paper.

1

PATENT
Serial No. 09/897,003

## IN THE SPECIFICATION

Please replace the paragraph at Column 4, ll. 20-38 with the following amended paragraph:

An operating system 240 includes a program for controlling processing by the CPU 205, and is typically stored in the data storage device 230 and loaded into the RAM 235 for execution. A service engine 245 includes a program for performing a particular service such as maintaining an e-mail data base, a calendar data base, a bookmarks data base or another file data base, and may be also stored in the data storage device 230 and loaded into the RAM 235 for execution. To perform a service, the service engine 245 operates on service data 250 (e.g., the e-mail data 165, the file data 170, the calendar data 175 or the user data 180), which is typically stored in the data storage device [250] 230. The service data 250 includes version information 255 indicating the date and time of the last modification. The service engine 245 operates to update the version information 255 whenever modifications are made. It will be appreciated that the portion of memory in the data storage device [250] 230 which contains the service data 250 is referred to as the service "store."

Please replace the paragraph at Column 4, ll. 44-59 with the following amended paragraph:

An operating system 340 includes a program for controlling processing by the CPU 305, and is typically stored in the data storage device 330 and loaded into the RAM 335 for execution. A desktop service engine 345 (i.e., a particular service engine 245, FIG. 2) includes a service program for managing user data 180 (i.e., particular service data 250, FIG. 2) which includes version information 350 (i.e., particular version information 255, FIG. 2). The desktop service engine 345 may be also stored in the data storage device 330 and loaded into the RAM 335 for execution. The user data 180 may be stored in the data storage device 330. As stated above with reference to FIG. 1, the base system [1 90] 190 operates to synchronize the workspace data 185 (which includes user data 180) with the workspace data 123. The base system 190 may be also stored in the data storage device 330 and loaded into the RAM 335 for execution.

2

PATENT
Serial No. 09/897,003

Please replace the paragraph at Column 5, ll. 35-49 with the following amended paragraph:

The synchronization-start module 420 includes routines for determining when to initiate synchronization of workspace data 123 and workspace data 185. For example, the synchronization-start module 420 may initiate data synchronization upon user request, at a particular time of day, after a predetermined time period passes, after a predetermined number of changes, after a user action such as user log-off or upon like criteria. The synchronization-start module 420 initiates data synchronization by instructing the general synchronization module 425 to begin execution of its routines. It will be appreciated that communications with synchronization agent 126 preferably initiate from within the corporate LAN [1135] 135, because the typical corporate firewall 130 prevents in-bound communications and allows out-bound communications.

Please replace the paragraph at Column 6, ll. 15-27 with the following amended paragraph:

The content-based synchronization module 430 includes routines for reconciling two or more modified versions in workspace data 123, 185 of the same workspace element. For example, if the original and the copy of a user workspace element have both been modified independently since the last synchronization, the [contentbased] content-based synchronization module 430 determines the appropriate responsive action. The content-based synchronization module 430 may request a user to select the preferred one of the modified versions or may respond based on preset preferences, i.e., by storing both versions in both stores or by integrating the changes into a single preferred version which replaces each modified version at both stores.

Please replace the paragraph at Column 6, ll. 28-41 with the following amended paragraph:

FIG. 5 is a block diagram illustrating details of the synchronization agent 126, which includes a communications module 505 (similar to the communications module 405 described above with reference to FIG. 4) and a general synchronization module 510 (similar to the general synchronization module 425 described above also with reference to FIG. 4). The communications

3

PATENT
Serial No. 09/897,003

module 505 includes routines for compressing data, and routines for communicating via the communications channel 125 with the base system 190. The communications module 505 may further include routines for establishing a secure communications channel through the global firewall [126] 115 and through the corporate firewall 130.

Please replace the paragraph at Column 6, ll. 42-56 with the following amended paragraph:

The general synchronization module 510 includes routines for comparing the version information 124 with the last synchronization signature 435, and routines for forwarding to the general synchronization module 425 version information 124 determined to be modified. The general synchronization module 510 may [either] maintain its own last synchronization signature 435 copy (not shown). Alternatively, the request to synchronize from the base system 190 may include a copy of the last synchronization signature 435. The general synchronization module 510 further includes routines for receiving preferred versions of workspace data 185 workspace elements from the general synchronization module 425, and routines for forwarding preferred versions of workspace data 123 workspace elements to the general synchronization module 425.

**IN THE CLAIMS**:

Claim 24 has been amended herein.  Please note that all claims currently pending and under consideration in the referenced application are shown below.  Please enter these claims as amended.

**Listing of Claims:**

1. (Original)  A computer-based method comprising the steps of:
(a) generating first examination results from first version information which indicates whether a
    first workspace element stored at a first store within a firewall has been modified;
(b) generating second examination results from second version information which indicates
    whether an independently-modifiable copy of the first workspace element has been
    modified, the copy being stored at a second store outside the firewall;

4

**PATENT**
**Serial No. 09/897,003**

(c) initiating steps (a) and (b) from within the firewall when predetermined criteria have been
     satisfied;

(d) generating a preferred version from the first workspace element and from the copy based on
     the first and second examination results; and

(e) storing the preferred version at the first store and at the second store.

2. (Original) The method of claim 1 wherein the second store is on a global server outside the firewall and which is protected by a global firewall.

3. (Original) The method of claim 1 wherein the first version information includes the date and time the first workspace element was last modified and the second version information includes the date and time the copy was last modified.

4. (Original) The method of claim 3 wherein generating the first examination results includes the step of comparing the first version information against a date and time of last synchronization.

5. (Original) The method of claim 3 wherein generating the second examination results includes the step of comparing the second version information against a date and time of last synchronization.

6. (Original) The method of claim 1 further comprising, before generating the first examination results, the step of updating the first version information whenever the first workspace element is modified.

7. (Original) The method of claim 1 further comprising, before generating the second examination results, the step of updating the second version information whenever the copy is modified.

5

PATENT
Serial No. 09/897,003

8. (Original) The method of claim 1 wherein if only one of the first workspace element and the copy has been modified, then the step of generating includes selecting the one as the preferred version.

9. (Original) The method of claim 1 further comprising the step of locating the first workspace element, the first version information, the copy and the second version information.

10. (Original) A system comprising:

a general synchronization module for operating within a first firewall and for examining first version information to determine whether a first workspace element has been modified;

a synchronization agent for operating outside the first firewall and for forwarding to the general synchronization module second version information which indicates whether an independently modifiable copy of the first workspace element has been modified;

a synchronization-start module for operating within the first firewall and for initiating the general synchronization module and the synchronization agent when predetermined criteria have been satisfied;

means for generating a preferred version from the first workspace element and from the copy by comparing the first version information and the second version information; and

means for storing the preferred version at the first store and at the second store.

11. (Original) The system of claim 10 further comprising a communications module for communicating through the first firewall.

12. (Original) The system of claim 10 wherein the synchronization agent and the second store are on a global server which is protected by a global firewall.

13. (Original)  The system of claim 12 further comprising a communications module for communicating through the first firewall and through the global firewall.

6

PATENT
Serial No. 09/897,003

14. (Original) The system of claim 10 wherein the first version information includes the date and time the first workspace element was last modified and the second version information includes the date and time the copy was last modified.

15. (Original) The system of claim 14 wherein the general synchronization module compares the first version information against a date and time of last synchronization.

16. (Original) The system of claim 14 wherein the synchronization agent compares the second version information against the date and time of last synchronization.

17. (Original) The system of claim 10 further comprising means for updating the first version information whenever the first workspace element is modified.

18. (Original) The system of claim 10 further comprising means for updating the second version information whenever the copy is modified.

19. (Original) The system of claim 10 wherein if only one of the first workspace element and the copy has been modified, then the means for generating selects the one as the preferred version.

20. (Original) The system of claim 10 further comprising a locator module for locating the first store, the first workspace element, the first version information, the second store, the copy and the second version information.

21. (Original) A system comprising:

first means for generating first examination results from first version information which indicates whether a first workspace element stored at a first store within a firewall has been modified;

second means for generating second examination results from second version information which indicates whether an independently-modifiable copy of the first workspace element has been modified, the copy being stored at a second store outside the firewall;

7

PATENT
Serial No. 09/897,003

means for initiating the first and second means from within the firewall when predetermined
  criteria have been satisfied;
means for generating a preferred version from the first workspace element and from the copy
  based on the first and second examination results; and
means for storing the preferred version at the first store and at the second store.


22. (Original) A computer-readable storage medium storing program code for causing a
computer to perform the steps of:
(a) generating first examination results from first version information which indicates whether a
  first workspace element stored at a first store within a firewall has been modified;
(b) generating second examination results from second version information which indicates
  whether an independently-modifiable copy of the first workspace element has been
  modified, the copy being stored at a second store outside the firewall;
(c) initiating steps (a) and (b) from within the firewall when predetermined criteria have been
  satisfied;
(d) generating a preferred version from the first workspace element and from the copy based on
  the first and second examination results; and
(e) storing the preferred version at the first store and at the second store.


23. (Original) A computer-based method comprising the steps of:
(a) generating first examination results from first version information which indicates whether a
  first workspace element stored at a first store within a firewall has been modified;
(b) generating second examination results from second version information which indicates
  whether an independently-modifiable copy of the first workspace element has been
  modified, the copy being stored at a second store outside the firewall;
(c) initiating steps (a) and (b) from within the firewall when predetermined criteria have been
  satisfied;
(d) determining based on the first and second examination results that both the first workspace
  element and the copy have been modified; and
(e) storing both the first workspace element and the copy at the first store and at the second store.


8

PATENT
Serial No. 09/897,003

24. (Currently amended) A system comprising:

first means for generating first examination results from first version information which indicates whether a first workspace element stored at a first store within a firewall has been modified;

second means for generating second examination results from second version information which indicates whether an independently-modifiable copy of the first workspace element has been modified, the copy being stored at a second store outside the firewall;

means for initiating the first and second means from within the firewall when predetermined criteria have been satisfied;

means for determining based on the first and second examination results that both the first workspace element and the copy have been modified; and

means for storing both the first [file] workspace element and the copy at the first store and at the second store.

25. (Original) A system comprising:

a global server for operating outside a firewall and including memory for storing first workspace data and corresponding first version information; and

a synchronization agent for managing the first workspace data and the corresponding first version information and for communicating with remote clients; and

a remote client for operating within the firewall and including memory for storing second workspace data and corresponding second version information;

means for cooperating with the synchronization agent to synchronize the first workspace data with the second workspace data by examining the first version information and the second version information; and

a synchronization-start module for initiating workspace data synchronization between the global server and the remote client.

PATENT
Serial No. 09/897,003

## REMARKS

The Office Action mailed February 7, 2005, has been received and reviewed. Claims 1 through 25 are currently pending. Claims 1, 9 through 11, and 20 through 25 stand rejected. Claims 2 through 8 and 12 through 19 have been objected to as being dependent upon rejected base claims, but the indication of allowable subject matter in such claims is noted with appreciation.

The Patent Owner has amended claim 24, as well as portions of the specification, for the purpose of correcting minor typographical or grammatical errors. The amendments are supported by the as-filed specification and drawings and do not add any new matter. Furthermore, the amendments are not made for the purpose of narrowing the claims, and the Patent Owner respectfully asserts that no surrender or disclaimer of claim scope, and more specifically, of the broadest possible range of equivalents to which the Patent Owner may be entitled has been effectuated.

**Allowable Subject Matter**

Claims 2 through 8 and 12 through 19 are objected to as being dependent upon a rejected base claim, but would be allowable if rewritten in independent form including all of the limitations of the base claim and any intervening claims. The Patent Owner respectfully submits that the objection to claims 2 through 8 and 12 through 19 is improper, and that the claims are allowable without being rewritten in independent form.

Support for the allowability of claims 2 through 8 and 12 through 19 in their present form is found in MPEP 2660.1, which states:

> If an unamended base patent claim (i.e., a claim appearing in the reexamination as it appears in the patent) has been rejected or cancelled, any claim which is directly or indirectly dependent thereon should be confirmed or allowed if the dependent claim is otherwise allowable. The dependent claim should *not* be objected to or rejected merely because it depends on a rejected or canceled patent claim. No requirement should be made for rewriting the dependent claim in independent form.

10

PATENT
Serial No. 09/897,003

In view of the foregoing, the Patent Owner respectfully requests that the objection to claims 2 through 8 and 12 through 19 be withdrawn.

**35 U.S.C. § 103(a) Obviousness Rejections**

Obviousness Rejection Based on U.S. Patent No. 5,857,201 to Wright, Jr. et al. in View of U.S. Patent No. 6,006,274 to Hawkins et al.

Claims 1, 9 through 11 and 20 through 25 stand rejected under 35 U.S.C. § 103(a) as being unpatentable over Wright (U.S. Patent No. 5,857,201) in view of Hawkins (U.S. Patent No. Hawkins). The Patent Owner respectfully traverses this rejection, as hereinafter set forth.

M.P.E.P. 706.02(j) sets forth the standard for a Section 103(a) rejection:

> To establish a *prima facie* case of obviousness, three basic criteria must be met. First, there must be some suggestion or motivation, either in the references themselves or in the knowledge generally available to one of ordinary skill in the art, to modify the reference or combine reference teachings. Second, there must be a reasonable expectation of success. Finally, the prior art reference (or references when combined) must teach or suggest all the claim limitations. The teaching or suggestion to make the claimed combination and the reasonable expectation of success must both be found in the prior art, and not based on applicant's disclosure. *In re Vaeck*, 947 F.2d 488, 20 USPQ2d 1438 (Fed. Cir. 1991). (Emphasis added).

The present rejections of claims 1, 9 through 11 and 20 through 25 are improper because they fail to establish a *prima facie* case of obviousness.

Turning to the cited references, the Wright patent was filed on June 18, 1996, and is directed to a client/server architecture for connection between mobile computing devices and enterprise computing systems. The client/server system described includes a server portion 107 having servers and databases connected by a LAN 106, clients 136 such as PDA's, and a FormLogic (FL) server 132 acting as a gateway between the clients 136 and enterprise data sources on the LAN (Fig. 2 and cols. 4-6). Communication agents 170 on clients 136 are used to describe synchronization sessions 200, 202 which are requested by a client 136 for performing specific tasks 204-210 (e.g. get outgoing mail from client, send new incoming mail from server to client)(Fig. 3. and cols. 6-7). Upon client log-on, the server checks an application profile sent from the clients 136, and determines whether the client has the latest versions of application software. If not, the server "synchronizes" the applications by sending the latest application

11

versions to the client (col. 11).  Thereafter, the server carries out the specific tasks for a given session.

The Hawkins patent was filed on January 30, 1997, and is directed to systems for synchronizing a PDA with a desktop computer.  Synchronization environments are described as including: synchronizing multiple palmtop computer systems with a single personal computer system, synchronizing a single palmtop computer system with multiple personal computer systems, synchronizing a palmtop computer system with a remote personal computer system across a network using a local personal computer system, and remotely synchronizing with a personal computer system across a telephone line (col. 2).  Synchronization involves connecting a PDA to a desktop computer, and then initiating synchronization from the PDA (Figs. 1, 2, 4, 5a, and 6a-7).  In one synchronization example provided, the PDA communicates with a desktop computer located in a LAN over the Internet (col. 10).  The LAN may be protected by a firewall, which may require any communication with the Internet to pass through a proxy application.  Each proxy application filters the packets associated with its respective protocol before allowing the packets to access the internal Local area Network.

Initially, claims 1, 9 through 11 and 20 through 25 all include limitations recited in terms of a "firewall."  Claims 1, 22 and 23, for example, recite the limitation of "initiating steps (a) and (b) from within the firewall."  Claim 10 recites the limitation of "a synchronization-start module for operating within the first firewall and for initiating the general synchronization module and the synchronization agent," and claims 21 and 24 recite "means for initiating the first and second means from within the firewall."  Claim 25 recites "a global server for operating outside a firewall" and "a remote client for operating within the firewall."

The Office asserts that Wright's enterprise computer environment clearly included a firewall element for security reasons (Office Action, p. 3).  After a careful review of this reference, however, the Patent Owner is unable to find any discussion of a firewall whatsoever, and it is respectfully submitted that this is a mischaracterization of what Wright discloses.

With respect to claims 1, 9-11, and 20-24, the Office goes on to acknowledge that Wright does not explicitly teach a firewall element in a manner illustrated in the claim language, but asserts that Hawkins teaches initiating synchronization from within a firewall and it would be obvious to modify Wright in this manner to provide an added security measure (Office Action, p 3).  As discussed above, however, the disclosure in Hawkins relied upon by the Office merely

12

PATENT
Serial No. 09/897,003

describes using proxy applications on a firewall server to carry out a specific synchronization protocol (col. 10, ll. 43-58). In every instance, Hawkins describes synchronization as being initiated by a remote device, rather than within a firewall (Figs. 2 and 5a, and col. 3, ll. 22-27 and 65-67, col. 4, ll. 38-42, col. 5, ll. 59-65, col. 6, ll. 39-40, and col. 9, ll. 32-49). As such, neither Wright nor Hawkins teach or suggest initiating synchronization from within a firewall, and there is no suggestion or motivation, either in the references themselves or in the knowledge generally available to one of ordinary skill in the art, to modify the references or combine reference teachings as presented by the Office.

With respect to claim 25, which recites "a global server for operating outside a firewall," Hawkins only teaches using a firewall to protect an internal LAN (Fig. 7). Even if there were some motivation to modify Wright to include a firewall as taught by Hawkins, it would not suggest whether the FL server 132 of Wright (which the Office considers to be a global server) would be inside or outside the firewall. Moreover, it appears that there are only two possible combinations of Wright and Hawkins that could be used in conjunction with the present rejection, neither of which would work. If the FL server 132 was modified to also act as a firewall server such as that described in Hawkins, it would not be outside the firewall. If a firewall server was inserted in between the FL server 132 and the rest of the network, FL server 132 would not perform the intended function described in Wright of serving as a gateway between remote clients and network servers.

In view of the foregoing, the proposed combination of references fails to establish a *prima facie* case of obviousness, and the rejected claims are allowable at least for the reasons discussed above. The claims are further allowable because Wright and Hawkins also fail to teach or suggest other limitations of claims 1, 9 through 11 and 20 through 25.

Independent claims 1 and 21-24, for example, further recite the limitations of "first version information which indicates whether a first workspace element ... has been modified" and "second version information which indicates whether an independently modifiable copy of the first workspace element has been modified." Independent claim 10 further recites the limitations of "examining first version information to determine whether a first workspace element has been modified" and "second version information which indicates whether an independently modifiable copy of the first workspace element has been modified."

13

PATENT
Serial No. 09/897,003

The Office relies on a discussion of synchronizing application programs in Wright to satisfy these limitations.  What Wright actually describes, however, is a situation wherein a remote client device 136 establishes a communication link with the FL server 132 and sends log-on information (col. 10, l. 55 – col. 11, l. 7).  Part of the information sent is an application profile, which includes application version numbers.  The server compares the version numbers against an administration profile containing a list of the most current applications and their version numbers (col. 11, ll. 10-17).  If any applications on the remote client are not the most current, a synchronization program sends the new "most current" application(s) to the client.

This operation does not indicate or determine whether a workspace element or copy has been modified, as recited in independent claims 1, 10 and 21-24.  Rather, it is a one-way operation wherein the server simply looks to see if it has a new version of application software that is not on the client.  If so, it just sends the new application to the client.  Moreover, the Wright patent does not teach that applications on the handheld device are independently modifiable, nor does it teach that e-mails on the handheld device are independently modifiable.  Wright, therefore, fails to disclose the above described limitations of independent claims 1, 10, and 21-24, either alone or as proposed to be combined with Hawkins.

Independent claims 23 and 24 also further recite "storing both the first workspace element and the copy at the first store and the second store."  The Office relies on the discussion of checking for new applications, as well as the discussion of transferring e-mail records from the client to the Server in Wright to assert this limitation (Office Action, p. 5).  Wright does describe storing the same version of an application or an e-mail record at both the client and the server (col. 11:10-24 and 30-50).  Multiple versions of applications or email records, however, are not disclosed as being stored on either the remote client 136 or the FL server 132.

In view of the foregoing, the Patent Owner respectfully submits that there is no motivation for combining the cited references as suggested, and that neither of the references, alone or as combined, teach or suggest all of the limitations of the rejected claims.  Accordingly, the Patent Owner submits that claims 1, 9 through 11 and 20 through 25 are allowable over Wright in view of Hawkins, and respectfully requests that the present rejections be withdrawn and the case passed to issue.

14

PATENT
Serial No. 09/897,003

### ENTRY OF AMENDMENTS

The proposed amendments to the specification and claim 24 above should be entered by the Examiner because the amendments are supported by the as-filed specification and drawings and do not add any new matter to the application.

### CONCLUSION

Claims 1 through 25 are believed to be in condition for allowance, and an early notice thereof is respectfully solicited. Should the Examiner determine that additional issues remain which might be resolved by a telephone conference, he is respectfully invited to contact the Patent Owner's undersigned attorney.

Respectfully submitted,

Greg T. Warder
Registration No. 50,208
Attorney for Patent Owner(s)

MANATT, PHELPS & PHILLIPS LLP
1001 Page Mill Rd, Bldg 2
Palo Alto, California 94304
650-812-1321  Telephone
650-213-0260  Facsimile

Date:  April 7, 2005

20131332.1

15