# EXHIBIT 7

# Amendment and Response,
# dated February 14, 2000
# (Paper No. 19)

Our Docket No. 40827.00002

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

RECEIVED
FEB 29 2000
TC 2700 MAIL ROOM

### CERTIFICATE OF MAILING

I hereby certify that this paper (along with any paper referred to as being attached or enclosed) is being deposited with the United States Postal Service on the date shown below with sufficient postage as first class mail in an envelope addressed to the Assistant Commissioner for Patents, Washington, D.C. on

Date: 2/14/00      By: Marion Dick    Marion Dick

| In Re Application of: | | |
|---|---|---|
| Daniel Mendez | | |
| Serial No.: 09/008,354 | Examiner: | D. Mizrahi |
| Filed: January 16, 1998 | Art Unit: | 2771 |
| For: System and Method for Using a Workspace Data Manager to Access, Manipulate and Synchronize Network Data | | |

Assistant Commissioner for Patents
Washington, D.C. 20231

### AMENDMENT AND RESPONSE

Sir:

In response to the office action mailed on September 21, 1999, the statutory period for response being extended until February 21, 2000 by the enclosed two-month Petition for Extension of Time, please amend the application as follows:

Our Docket No. 40827.00002

IN THE CLAIMS:

1.    A computer-based method, comprising the steps of:

executing a workspace data manager on a client site;

requesting the workspace data manager to access data from a remote site;

downloading data from [a] the remote site;

[requesting a] using the workspace data manager to enable manipulation of the downloaded data, [and] thereby [create] creating manipulated data; [and]

synchronizing the manipulated data with the data [stored] at the remote site; and

disabling the client site from accessing at least a portion of one of the downloaded data and the manipulated data.

2.    (Once amended)  The method of claim 1, further comprising the step of requesting the workspace data manager to provide an interface for enabling manipulation of the downloaded data.

*3.    The method of claim 2, further comprising the step of using the workspace data manager interface to request synchronization.

*4.    The method of claim 2, wherein the workspace data manager provides an interface by creating an instance.

*5.    The method of claim 2, wherein the workspace data manager provides an interface by providing access to its only interface.

6.    (Once amended)  The method of claim 1, further comprising the step of translating the [workspace] downloaded data from the format used by the remote site and the format used by the workspace data manager.

*7.    The method of claim 1, further comprising the step of deleting the workspace data manager interface after manipulation of data is no longer needed.

131/199154.01.00
021400/1547/40827.00002                              2

Our Docket No. 40827.00002

8.    (Once amended)  The method of claim 1, wherein the data [stored] at the remote site has not [changed] been modified after the step of downloading and before the step of synchronizing and therefore includes the downloaded data.

9.    (Once amended)  The method of claim 1, wherein the data [stored] at the remote site has been modified after the step of downloading and before the step of synchronizing, and therefore is different than the downloaded data.

10.    (Once amended)  A system on a client site, comprising:

a communications module for [downloading workspace] obtaining data from a remote site;

an application program interface coupled to the communications module for communicating with a workspace data manager to enable manipulation of the downloaded workspace data and thereby create manipulated data; [and]

a general synchronization module coupled to the communications module for synchronizing the manipulated data with the workspace data [stored] at the remote site; and

program code coupled to the application program interface for disabling the client site from accessing at least a portion of one of the downloaded workspace data and the manipulated data.

11.    (Once amended)  The system of claim 10, further comprising an instantiator for requesting the workspace data manager to provide [an] a data manipulation interface for enabling manipulation of the downloaded [workspace] data.

*12.    The system of claim 11, wherein the data manipulation interface enables a request to synchronize the data.

Our Docket No. 40827.00002

13.     (Once amended)  The system of claim 11, wherein the workspace data manager creates another instance of the interface to enable manipulation of the <u>downloaded</u> data.



14.     (Once amended)  The system of claim 11, wherein the workspace data manager provides access to its only interface to enable manipulation of the <u>downloaded</u> data.

*15.    The system of claim 10, further comprising a data reader for translating the downloaded workspace data from the format used by the remote site to the format used by the workspace data manager.

*16.    The system of claim 11, further comprising a de-instantiator for deleting the data manipulation interface after manipulation of data is no longer required.



17.     (Once amended)  The system of claim 10, wherein the data stored at the remote site has not [changed] <u>been modified</u> and therefore includes the downloaded data.

*18.    The system of claim 10, wherein the data stored at the remote site has been modified, and therefore is different than the downloaded data.

*19.    The system of claim 18, further comprising a content-based synchronization module for synchronizing the data stored at the remote site with the manipulated data.



20.     (Once amended)  A system comprising:
        <u>means for executing a workspace data manager on a client site;</u>
        <u>means for requesting the workspace data manager to access data from a remote site;</u>
        means for downloading data from [a] <u>the</u> remote site;
        means for [requesting a] <u>using the</u> workspace data manager to enable manipulation of the <u>downloaded</u> data, [and] thereby [create] <u>creating</u> manipulated data; [and]

Our Docket No. 40827.00002

means for synchronizing the manipulated data with the data [stored] at the remote site; and

means for disabling the client site from accessing at least a portion of one of the downloaded data and the manipulated data.

21.     A computer-readable storage medium storing program code for causing a computer to perform the steps of:

executing a workspace data manager on a client site;

requesting the workspace data manager to access data from a remote site;

downloading data from [a] the remote site;

[requesting a] using the workspace data manager to enable manipulation of the downloaded data, [and] thereby [create] creating manipulated data; [and]

synchronizing the manipulated data with the data [stored] at the remote site; and disabling the client site from accessing at least a portion of one of the downloaded data and the manipulated data.

* no amendments - provided for Examiner and Applicant convenience

## REMARKS

Claims 1-21 were examined and rejected in this case.  Claims 1, 2, 6, 8-11, 13, 14, 17, 20 and 21 are being amended.  Reconsideration of the application as amended is respectfully requested.

In paragraphs 3-8, the Examiner rejected claims 1-21 under 35 USC § 103 as being unpatentable over Reed in view of Deaton.  The Examiner specifically asserted that Reed teaches requesting a workspace data manager to enable manipulation of data, and teaches synchronizing the manipulated data stored in a remote site.  The Examiner then admitted that Reed does not include downloading the data from a remote site, and asserted that Deaton teaches downloading data from a remote site.

Our Docket No. 40827.00002

First, Applicant respectfully submits that neither Reed nor Deaton teaches using a workspace data manager to download and manipulate data from a remote site and to synchronize the manipulated data with the remote site, as similarly recited in independent claims 1, 10, 20 and 21. These claimed embodiments enable a traveling user to log on from any client site that includes a workspace data manager configured to perform these steps, to access data previously stored at the remote site, and to synchronize the data with the remote site for subsequent use.

Second, Applicant is amending independent claims 1, 10, 20 and 21 similarly to include "disabling the client site from accessing at least a portion of one of the downloaded data and the manipulated data." Since neither Reed nor Deaton teach this element and the elements discussed above, Applicant respectfully submits that independent claims 1, 10, 20 and 21 as amended are novel and non-obvious over Reed in view of Deaton for at least these reasons. Applicant also submits that claims 2-9 and 11-19, dependent therefrom, are novel and non-obvious for at least these reasons. Applicant therefore respectfully requests that the rejection of claims 1-21 be withdrawn.

Applicant requests the Examiner to enter the above amendments to the Specification. No new matter is being added.

If the Examiner has any questions or needs any additional information, the Examiner is invited to telephone the undersigned attorney at (650) 843-3392.

If for any reason an insufficient fee has been paid, the Assistant Commissioner is hereby authorized to charge the insufficiency to Deposit Account No. 05-0150.

Dated: February 14, 2000

Graham & James LLP
600 Hansen Way
Palo Alto, CA 94304-1043
650-856-6500

Respectfully Submitted,
Daniel Mendez

Marc A. Sockol
Attorney for Applicants
Reg. No. 40,823

131/199154.01.00
021400/1547/40827.00002

6

# Supplemental Amendment, dated March 9, 2000 (Paper No. 20)

MAR-09-2000  11:31          GRAHAM & JAMES PA                650 856 3619    P.04/10

# OFFICIAL   Our Docket No. 40827.00002

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

### CERTIFICATE OF MAILING

I hereby certify that this paper (along with any paper referred to as being attached or enclosed) is being transmitted via facsimile to Examiner Diane Mizrahi at 703-308-5403 on

Date: 3/9/00          By: Marion Dick    Marion Dick

| | |
|---|---|
| In Re Application of: | |
| Daniel Mendez | |
| Serial No.: 09/008,354 | Examiner:  D. Mizrahi |
| Filed:      January 16, 1998 | Art Unit:  2771 |
| For:       System and Method for Using a Workspace Data Manager to Access, Manipulate and Synchronize Network Data | |

Assistant Commissioner for Patents
Washington, D.C.  20231

### SUPPLEMENTAL AMENDMENT

Sir:

  In response to our telephone conversations of March 7, 2000 and March 8, 2000, please amend the application as follows:

MAR-09-2000  11:32      GRAHAM & JAMES PA              650 856 3619   P.05/10

Our Docket No. 40827.00002

IN THE CLAIMS:

1.    (Twice amended)  A computer-based method, comprising the steps of:

executing a workspace data manager on an untrusted client site;

requesting the workspace data manager to access data temporarily from a remote site, the remote site being connected via a network to the untrusted client site;

initiating a communications channel with the remote site;

downloading data from the remote site;

placing the data in temporary storage on the untrusted client site;

using the workspace data manager to [enable manipulation of] present the downloaded data[, thereby creating manipulated data;

synchronizing the manipulated data with the data at the remote site]; and

automatically disabling the untrusted client site from accessing at least a portion of [one of] the downloaded data [and the manipulated data] after a user has finished using the data.

2.    (Twice amended)  The method of claim 1, further comprising the step of requesting the workspace data manager to provide an interface for enabling [manipulation] presentation of the downloaded data.

3.    (Once amended)  The method of claim 2, further comprising the steps of using the workspace data manager to manipulate the downloaded data, thereby creating manipulated data, using the workspace data manager interface to request synchronization, and synchronizing the manipulated data with the data at the remote site.

*4.    The method of claim 2, wherein the workspace data manager provides an interface by creating an instance.

*5.    The method of claim 2, wherein the workspace data manager provides an interface by providing access to its only interface.

131/200174.01.00                              2
030800/1225/40827.00002

5

Our Docket No. 40827.00002

B3    4
*6.    (Once amended)  The method of claim 1, further comprising the step of translating the downloaded data from the format used by the remote site and the format used by the workspace data manager.

B4    9
7.    (Once amended)  The method of claim 1, further comprising the step of deleting the workspace data manager interface after [manipulation of data] it is no longer needed. ·

4
8.    (Twice amended)  The method of claim [1] 2, wherein the data at the remote site has not been modified after the step of downloading and before the step of synchronizing and therefore includes the downloaded data.

9.    (Twice amended)  The method of claim [1] 2, wherein the data at the remote site has been modified after the step of downloading and before the step of synchronizing, and therefore is different than the downloaded data.

B5

10.    (Twice amended)  A system on an untrusted client site, comprising:
a communications module for [obtaining] downloading data from a remote site, the remote site being connected via a network to the untrusted client site;
program code for placing the downloaded data in temporary storage on the untrusted client site;
an application program interface coupled to the communications module for communicating with a workspace data manager to [enable manipulation of] present the downloaded [workspace] data [and thereby create manipulated data;
a general synchronization module coupled to the communications module for synchronizing the manipulated data with the workspace data at the remote site]; and
program code coupled to the application program interface for automatically disabling the untrusted client site from accessing at least a portion of [one of] the downloaded [workspace] data [and the manipulated data] after a user has finished using the data.

131/200174.01.00
030800/1225/40827.00002

3

6

Our Docket No. 40827.00002

*B5*

11.    (Twice amended)  The system of claim 10, further comprising an instantiator for requesting the workspace data manager to provide [a data manipulation] an interface for enabling [manipulation] presentation of the downloaded data.

*B6*

12.    (Once amended)  The system of claim 11, wherein the workspace data manager enables manipulation of the downloaded data to create manipulated data and the data manipulation interface enables a request to synchronize the data, and further comprising a synchronization module coupled to the communications module for enabling synchronization of the manipulated data with the data at the remote site.

*B7*    16 13.    (Twice amended)  The system of claim 11, wherein the workspace data manager creates another instance of the interface to enable [manipulation] presentation of the downloaded data.

17 14.    (Twice amended)  The system of claim 11, wherein the workspace data manager provides access to its only interface to enable [manipulation] presentation of the downloaded data.

"15.    The system of claim 10, further comprising a data reader for translating the downloaded workspace data from the format used by the remote site to the format used by the workspace data manager.

*B8*    18 16.    (Once amended)  The system of claim 11, further comprising a de-instantiator for deleting the [data manipulation] interface after [manipulation of data] it is no longer required.

*B9*    19 17.    (Twice amended)  The system of claim [10] 12, wherein the data stored at the remote site has not been modified and therefore includes the downloaded data.

131/200174.01.00
030800/1228/40827.00002

4

7       16

25

MAR-09-2000  11:32      GRAHAM & JAMES PA              650 856 3619    P.08/10

Our Docket No. 40827.00002

*B9*   14 18.   (Once amended)  The system of claim [10] 12, wherein the data stored at the remote site has been modified, and therefore is different than the downloaded data.

\*19.   The system of claim 18, further comprising a content-based synchronization module for synchronizing the data stored at the remote site with the manipulated data.

20.   (Twice amended)  A system comprising:

means for executing a workspace data manager on an untrusted client site;

means for requesting the workspace data manager to access data temporarily from a remote site, the remote site being connected via a network to the untrusted client site;

means for initiating a communications channel with the remote site;

means for downloading data from the remote site;

means for placing the data in temporary storage on the untrusted client site;

*B10*   means for using the workspace data manager to [enable manipulation of] present the downloaded data[, thereby creating manipulated data];

means for synchronizing the manipulated data with the data at the remote site]; and

means for disabling the untrusted client site from accessing at least a portion of [one of] the downloaded data [and the manipulated data] after a user has finished using the data.

21.   (Twice amended)  A computer-readable storage medium storing program code for causing a computer to perform the steps of:

executing a workspace data manager on an untrusted client site;

requesting the workspace data manager to access data temporarily from a remote site, the remote site being connected via a network to the untrusted client site;

initiating a communications channel with the remote site;

downloading data from the remote site;

placing the data in temporary storage on the untrusted client site;

131/200174.01.00
030800/1225/40827.00002                              5

Our Docket No. 40827.00002

using the workspace data manager to [enable manipulation of] present the
downloaded data[, thereby creating manipulated data;

synchronizing the manipulated data with the data at the remote site]; and

automatically disabling the untrusted client site from accessing at least a portion
of [one of] the downloaded data [and the manipulated data] after a user has finished using
the data.

_B10_

---

\* no amendments - provided for Examiner and Applicant convenience

### REMARKS

Claims 1-3, 7-14, 17, 18, 20 and 21 are being amended.  Reconsideration of the
application as amended is respectfully requested.

Applicant would like to extend his sincere appreciation to the Examiner for the
telephone conversations of March 7, 2000 and March 8, 2000, to discuss the amendments
provided herein.

Applicant provides support for the amendments specifying (1) the client as
"untrusted," (2) the data as maintained "temporarily" and (3) the data as placed in
"temporary storage" at least on page 6, lines 8-10, which states, "The system and method
also advantageously delete downloaded data and all interfaces from the local client, so
that no traces are left on the client for unprivileged users to review." [Emphasis added].
Further, on page 21, lines 11-18, the specification describes a process of disabling the
client from accessing the downloaded data, by "delet[ing] all workspace data 135 and
data created by the user on the client 110, 115 or 120 and automatically initiated
synchronization of any manipulated downloaded data 135 with the workspace data 135
stored at the global server 105." Still further, the Outlook™ organizer and the Lotus™
organizer examples, which are provided on pages 22-25, describe specific techniques for
transferring downloaded data in and out of temporary storage controlled by the
workspace data manager. Applicant provides support for the amendment specifying that
the disabling of the untrusted client is effected "automatically" at least on page 5, lines 4

1361200174.01.00
030800/1225/40827.00002

6

9

_37_

Our Docket No. 40827.00002

and 5, which states, "Upon logout, a de-instantiator initiates synchronization and deletes the data stored locally."

If the Examiner has any questions or needs any additional information, the Examiner is invited to telephone the undersigned attorney at (650) 843-3392.

If for any reason an insufficient fee has been paid, the Assistant Commissioner is hereby authorized to charge the insufficiency to Deposit Account No. 05-0150.

Respectfully Submitted,
Daniel Mendez

Dated: March 9, 2000

Graham & James LLP
600 Hansen Way
Palo Alto, CA 94304-1043
650-856-6500

Marc A. Sockol
Attorney for Applicants
Reg. No. 40,823

131/200174.01.00
000600/1225/40827.00002

7

TOTAL P.18

# Office Action, dated April 10, 2000 (Paper No. 21)



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 09/008,354 | 01/16/98 | MENDEZ | D | 40827.00002 |

| | EXAMINER |
|---|---|
| LM41/0410 | |
| | MIZRAHI,D |

| ART UNIT: | PAPER NUMBER |
|---|---|
| 2771 | |

GRAHAM & JAMES
600 HANSEN WAY
PALO ALTO CA 94304-1043

DATE MAILED:
04/10/00

Please find below and/or attached an Office communication concerning this application or
proceeding.

Commissioner of Patents and Trademarks

Application/Control Number: 09/008,354                                    Page 2

Art Unit: 2771

### III.    DETAILED ACTION

1.    Claims 1-21 are presented for examination.

2.    Applicant's arguments filed March 9, 2000 have been fully
considered and they are deemed to be persuasive.

### Allowable Subject Matter

3.    Claims 1-21 are allowed.

4.    The following is an examiner's statement of reasons for
allowance:'

     As in independent claims 1,20 and 21, Applicant's particular
system and associated method for executing a workspace data
manager on an untrusted client site, requested the workspace data
manager to access data temporarily from a remote site connected
to a network to the untrusted client site, initiating a remote
site communications channel, downloading the data from the remote
site, placing the data in the temporary storage on the untrusted
client site, using the workspace data manager to present the
downloaded data after a user has finished using the data (as
described in Applicant's amendment remarks page 6-7, lines 1-21 )
in combination with the other limitations of the claims, was not
disclosed by, would not have been obvious over, nor would have
been fairly suggested by the prior art of record.

Application/Control Number: 09/008,354                           Page 3

Art Unit: 2771

    As in independent claims 1,20 and 21, Applicant's particular
system on an untrusted client site comprising of downloading data
from a remote site connected to an untrusted client site, placing
the downloaded data from a remote site to the remote site bing
connected via a network to the untrusted client site, placing the
downloaded data in temporary storage on the untrusted client
site, communicating with a workspace data manger to present the
downloaded data and automatically disabling the untrusted client
site from accessing a portion of the downloaded data after a user
has finished using the data (as described in Applicant's
amendment remarks page 6-7, lines 1-21 ) in combination with the
other limitations of the claims, was not disclosed by, would not
have been obvious over, nor would have been fairly suggested by
the prior art of record.

    The dependent claims, being further limiting to the
independent claims, definite and enabled by the Specification are
also allowed.

5.   Since allowance subject matter has been indicated, Applicant
is encouraged to submit, _formal drawings_ in response to this
Office action.  Applicant is reminded of the provisions of MPEP
608.02(q) and 608.02(r) regarding a separate draftsman's letter.

Application/Control Number: 09/008,354                                    Page 4

Art Unit: 2771.

6.    Any comments considered necessary by applicant must be
submitted no later than the payment of the issue fee and, to
avoid processing delays, should preferably accompany the issue
fee.  Such submissions should be clearly labeled "Comments on
Statement of Reasons for Allowance."

7.    As allowable subject matter has been indicated, Applicant's
response must either comply with all formal requirements or
specifically traverse each requirement not complied with.  See 37
CRF 1.111(b) and MPEP section 707.07(a).

### Points of Contact

8.    Any inquiry concerning this communications from the examiner
should be directed to Diane Mizrahi whose telephone number is
(703) 305-3806.  The examiner can normally be reached on Monday
to Thursday from 7:30 AM. to 5:00 PM.

      If any attempt to reach the examiner by telephone is
unsuccessful, the examiner's supervisor, Thomas Black can be
reached on (703) 305-9707.  The fax phone number for this group
is (703) 308-5403.

Diane Mizrahi
Patent Examiner

April 9, 2000

THOMAS G. BLACK
SUPERVISORY PATENT EXAMINER
GROUP 2700