**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| VISTO CORPORATION, | § § § § § § § § § | |
| Plaintiff | | |
| v. | | CIVIL NO. 2:06-CV-39 (TJW) |
| GOOD TECHNOLOGY, INC., | | |
| Defendant. | | |

**DEFENDANT GOOD TECHNOLOGY, INC.'S REPLY BRIEF IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT OF INVALIDY OF U.S.
PATENT NO. 6,085,192 FOR FAILURE TO COMPLY WITH THE
REQUIREMENTS OF 35 U.S.C. § 112**

Good Technology, Inc. submits the following reply in support of its Motion for Summary Judgment of Invalidity of U.S. Patent No. 6,085,192:

### A. The '192 Patent Does Not Comply with the Written Description Requirement

There are two requirements set out in 35 U.S.C. § 112 ¶ 1 – the enablement requirement and the written description requirement. Good's motion addressed both. *See, e.g.,* Good Br. at 1 (statement of issues: "Whether claims 1, 8, 10, 11, 17, 21, and 22 of the '192 patent are invalid for failure to comply with the requirement<u>s</u> of 35 U.S.C. § 112 ¶ 1.") & 3-5 (explaining "***<u>two</u>*** closely-related requirements" under 112 ¶ 1)(emphasis added). In contrast, Visto's Brief addresses only one – enablement. *See* Visto Br. at 2 (seeking to redefine the issues presented as enablement only). Thus, through sleight of hand, Visto seeks to dismiss entirely its obligation to "***describe the invention*** sufficiently to convey to a person of skill in the art that ***the patentee had possession of the claimed invention at the time of the application***." *LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1344-45 (Fed. Cir. 2005).

Visto takes this tactic because the specification and other evidence make clear that Visto never had possession of the claimed invention in April 1997 when the application for the '192 patent was filed. *See* Undisputed Material Facts ¶¶ 1-4, 6-7.[1] This application did not describe any system or method that synchronizes workspace data in the absence of a global server. *Id.* ¶ 3. It also did not describe any system or method that explains how to synchronize data on a smart phone. *Id.* ¶ 4. Nonetheless, Visto's claims—rejiggered years later during reexamination—have been construed and amended to explicitly encompass such systems and methods. *Id.* ¶¶ 1-2. The Federal Circuit has made clear that "claims may be no broader than

---

[1] While Visto purports to dispute paragraphs 6 and 7, its response misses the point. Regardless of Visto's unsupported contention that the named inventors would have been able to make a system that synchronized workspace data among multiple sites without a global server or that synchronized data on a smart phone, the undisputed facts are that ***they did not make or describe any such system in 1997***. *See* Good Br. Exs. E-K.

the supporting disclosure." *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1480 (Fed. Cir. 1998) (invalidating broader claims under written description requirement of 35 U.S.C. § 112 ¶ 1). The specification of the '192 patent does not comply with this requirement. *See LizardTech*, 424 F.3d at 1345-46; 35 U.S.C. § 112 ¶ 1. Because Visto fails to submit any response to Good's motion based on the written description requirement, summary judgment should be entered on this ground. *See* Fed. R. Civ. P. 56(e) ("If the opposing party does not so respond, summary judgment, if appropriate, shall be entered against that party.").

### B. The '192 Patent Does Not Comply with the Enablement Requirement

Visto's Brief does address the enablement requirement. Visto concedes (as it must) that as of April 1997, when the '192 patent was filed, the named inventors had not actually made any system that synchronized workspace data among multiple sites without a global server or that synchronized data on a smart phone. Undisputed Material Facts ¶¶ 6-7. Instead, Visto argues that the specification of the '192 patent constructively reduced these inventions to practice. But because the specification of the '192 patent does not actually describe any such thing, Visto asks its expert, Thomas Gafford to "rewrite the patent's specification" and fill in the gaps—just as he has tried to do in other cases. *Default Proof Credit Card Sys., Inc. v. Home Depot U.S.A., Inc.*, 412 F.3d 1291, 1300-03 (Fed. Cir. 2005) (affirming summary judgment of invalidity where opinions offered by Mr. Gafford's in opposition were "either unsupported or contradicted by the express language of the written description"); *see also Sony Elecs., Inc. v. Soundview Techs., Inc.*, 225 F.Supp.2d 164, 176-77 (D. Conn. 2002) ("flawed" testimony from Mr. Gafford not sufficient to defeat summary judgment); *Relume Corp. v. Dialight Corp.*, 63 F.Supp.2d 788, 816 (E.D. Mich. 1999) (Mr. Gafford's "conclusory assessment is without a reliable factual

foundation" and should be rejected as "unreliable").[2]  Mr. Gafford's efforts in this case also fall short.  He offers unsupported opinions that contradict the specification and defy common sense.  His testimony cannot create any dispute of fact.

Visto has chosen broad claim language and "must make sure the broad claims are fully enabled."  *Sitrick v. Dreamworks, LLC*, No. 2007-1174, 2008 U.S. App. LEXIS 2251, at *12 (Fed. Cir. Feb. 1, 2008).  While this requirement may be met in some cases by disclosing one mode of making and using the claimed invention or even a best mode, it is not met if the disclosure fails to enable "a person of skill in the art to make and use ***the full scope of the invention***."  *LizardTech*, 424 F.3d at 1344-45.  Visto's reliance on *Johns Hopkins University v. Cellpro, Inc.*, 152 F.3d 1342, 1359 (Fed. Cir. 1998), for any contrary rule is misplaced.  Visto cannot have claims that cover every possible type of fuel-efficient engine just because it disclosed one mode of making and using its particular fuel-efficient engine.  *LizardTech*, 424 F.3d at 1346.  And the fact that Visto's claims do not "require" certain functionality does not mean that Visto does not have to ***enable*** that functionality if it is within the scope of the claims.  *Id.*  Because the specification of the '192 patent does not enable the full scope of the invention of claims 1, 8, 10, 11, 17, 21 and 22, summary judgment should be entered on this ground as well.

### 1. The '192 Patent Does Not Enable Synchronization without a Global Server

Visto and Mr. Gafford claim that the '192 patent includes a disclosure that enables synchronization without a global server.  Visto Br. at 8-11; Gafford Dec. ¶¶ 16-21.  They point to the specification at column 3, lines 41-54:

> Network 100 further comprises synchronization means, which includes a base system 190 stored within the corporate LAN 135 and for example on the desktop computer 160 and further includes a synchronization agent 126 stored outside the corporate firewall 130 and preferably on the global server 120.  The base system

---

[2] In addition, while Visto occasionally confers Mr. Gafford with a doctorate (*see, e.g.,* Visto Br. at 9), Mr. Gafford has only a bachelor's degree.  Gafford Dec. ¶ 7.

> 190 and the synchronization agent 126 cooperate to synchronize the workspace data 185 with the workspace data 123. Generally, the base system 190 manages the workspace data 185 within the corporate LAN 135 and the synchronization agent 126 manages the workspace data 123 within the global server 120. As described in greater detail below with reference to FIG. 4, the base system 190 preferably initiates and controls data synchronization.

Here, the patent is describing synchronization between a base system 190 within the corporate firewall and a synchronization agent 126 outside the corporate firewall on the global server. Mr. Gafford seizes on the word "preferably" in this section to conclude that the synchronization agent 126 may be located elsewhere. Gafford Dec. ¶ 16. Maybe so. But there is nothing else in the specification to say where—throughout the entire specification, the synchronization agent is described as being located solely on the global server. Undisputed Material Fact ¶ 3. This is no different than disclosing a "preferable" fuel-efficient engine (but no other engine) and then claiming all types of fuel-efficient engines.

      Visto and Mr. Gafford thus go further. They claim that because the remote terminal is the only thing other than the global server outside the corporate firewall and because the base system and the synchronization agent have some similar modules, the '192 patent must be disclosing (silently) that the remote terminal may include a synchronization agent. Visto Br. at 9-10; Gafford Dec. ¶¶ 21-22. There is absolutely no support in the specification for this assertion – and no sense behind it. The specification discloses that the synchronization agent is on the global server, not on the remote terminal. *See, e.g.,* '192 patent, Abstract; col. 1:63-2:2; col. 3:41-52; col. 3:63-67; col. 6:28-56; Fig. 1. Moreover, while the synchronization agent's communication module 505 and general synchronization module 510 may be similar in some respects to similarly named modules on the base system, this does not imply that a synchronization agent and a base system are interchangeable: the whole point is that the

synchronization agent and the base system must cooperate. '192 patent, col. 3:41-52.[3]

Still further, the '192 patent does disclose that the remote terminal "may include a second base system similar to base system 190." '192 patent, col. 3:60-63.  It would make no sense for the remote terminal to have a synchronization agent if it has a base system since the base system must cooperate with the synchronization agent "preferably" on a global server.  '192 patent, col. 3:63-67.  Visto and Mr. Gafford's theories are no more than speculation.  They find no support in the specification, which fails to enable any system that synchronizes data without a global server.

### 2. *The '192 Patent Does Not Enable Synchronization with a Smart Phone*

The '192 patent does state that the remote terminal may be a smart phone and further that the remote terminal may include a "second base system."  It does not include any other disclosure of how to implement a PC-based second base system on a limited memory device such as a smart phone.  *See* '192 patent, col. 3:58-4:6.  This is not surprising as Visto itself had not made any system for use with smart phones in 1997 when it filed the '192 patent.  Undisputed Material Fact ¶ 6.  Visto thus again relies on Mr. Gafford to fill the gaps in the '192 specification with conclusory and unsupportable opinions.

Visto first alleges that the '192 specification discloses that "the base system on the smart phone includes a communications module for establishing a secure communications channel *to the corporate LAN* and/or the global server."  Visto Br. at 12 (emphasis added); Gafford Dec. ¶¶ 22-24.  Not true.  The specification says that the remote terminal may include a second base system.  '192 patent, col. 3:57-4:6.  It also says that the first base system *behind the corporate firewall* includes a communications module 405 for establishing "a secure communication

---

[3] In its brief, Visto states that "[t]he synchronization agent, *also included in the base system*, is described with reference to Figure 5…."  Visto Br. at 9.  The synchronization agent is not included in the base system and Good assumes this was an oversight by Visto.  *See* '192 patent, Fig. 4 (base system).

channel through the corporate firewall 130 and through the global firewall 126." '192 patent, col. 5:7-9.  What is completely missing is any explanation at all for how the communications module in the second base system on the remote terminal *outside the firewall* could establish a secure communications channel *to the corporate LAN*.  Indeed, such a system would be expressly contrary to the specification, which states that "*the typical corporate firewall 130 prevents in-bound communications* and allows out-bound communications."  *See, e.g.,* '192 patent, col. 5:45-49 (emphasis added).  The second base system on the smart phone could not establish a communications channel to the corporate LAN because the corporate firewall "prevents in-bound communications."  Mr. Gafford's conclusory opinions directly contradicted by the specification of the '192 patent should be disregarded.  *Sitrick*, 2008 U.S. App. LEXIS 2251, at *16 ("Conclusory expert assertions cannot raise triable issues of material fact on summary judgment.").

      Visto next alleges that its admissions during reexamination of the '192 patent are a "distraction."  Visto Br. at 12-13.  But during the pending reexamination, Visto expressly admitted that "[s]mart phones in the relevant time frame *could not support such [PC-based] operating systems*."  Good Br. Ex. C (Visto's Nov. 5, 2007 Response to Office Action at 18 & Beckhardt Dec. at ¶ 7)(emphasis added).  Mr. Gafford now comes along and seeks to dispute this admission, arguing that smart phones in the relevant time period could support "solutions for implementing software."  Gafford Dec. ¶ 25.  Mr. Gafford is careful, however, to insist that by "software" he does not mean to include the prior art Lotus Notes software in front of the Patent Office (just any other software).  *Id.*  This is a cynical ploy and Visto should be held to its admission in front of the Patent Office—the specification is completely silent and cannot enable "solutions for implementing software" without also enabling the prior art software.

Finally, Visto points to the '708 patent in an attempt to provide support for Mr. Gafford's conclusory opinions. Visto Br. at 13; Gaffor Dec. ¶ 25 & Ex. A ('708 patent).[4] But here too, Visto's reliance is misplaced. Most of the disclosures in the '708 patent relate to minimizing data *communications* across the communications channel; they have nothing to do with "solutions to the limited capabilities of smart phones." *See, e.g.,* '708 patent, col. 4:49-53; col. 6:27-30; col. 7:44-48. For example, the '708 patent refers to "routines for compressing data" in the communication module in the base system—while such routines might minimize the data that has to be sent from the base system to the global server, they would actually increase the processing burden on the limited memory device (since that device would have to include routines for compressing and decompressing data). *See* '708 patent, col. 6:27-30. Indeed, the only solution to the limited capabilities of smart phones taught by the '708 patent is to use a global server: "Sometimes, primarily when the remote terminal 102 is a relatively less computationally powerful device (such as a smart phone or a PDA), most of the actual computationally intensive work will occur within the synchronization agent 124 in the global server 106." '708 patent, col. 4:59-63. This just further emphasizes that Visto had no solution for synchronizing data with a smart phone in the absence of a global server (perhaps the reason that Mr. Gafford fails to cite it).

Visto has admitted that smart phones in the relevant time frame could not support PC-based operating systems. It cannot now contradict its own admissions to the Patent Office. The '192 does not enable synchronization with a smart phone.

For the reasons stated above, the Court should enter summary judgment of invalidity with respect to the '192 patent.

---

[4] The '708 patent cannot cure Visto's written description problem—this patent is not incorporated in the '192 specification. *See* '192 patent, col. 1:5-20 & Visto Br. Ex. A.

Dated: March 17, 2008

Respectfully submitted,

By:  */s/J. David Hadden*
    J. David Hadden, Calif. Bar No. 176148
      (Admitted *Pro Hac Vice*)
FENWICK & WEST LLP
Silicon Valley Center, 801 California Street
Mountain View, CA  94041
Tel: (650) 988-8500
Fax: (650) 938-5162
E-mail: dhadden@fenwick.com

Attorneys for Defendant
GOOD TECHNOLOGY, INC.

*Of counsel:*
Blake C. Erskine, Bar No. 06649000
ERSKINE & MCMAHON, LLP
Post Office Box 3485
Longview, TX  75606-3485
Tel: (903) 757-8435
Fax: (903) 757-9429
E-mail: BlakeE@erskine-mcmahon.com

Attorneys for Defendant
GOOD TECHNOLOGY, INC.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on March 17, 2008, a true copy of the foregoing **DEFENDANT GOOD TECHNOLOGY, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF INVALIDY OF U.S. PATENT NO. 6,085,192 FOR FAILURE TO COMPLY WITH THE REQUIREMENTS OF 35 U.S.C. § 112** was served upon counsel of record for Plaintiff Visto Corporation by **hand delivery**, in addition to service by electronic mail and/or the court's CM/ECF system.

                                              By: */s/J. David Hadden*
                                                      J. David Hadden